IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| *Ex Parte* | ) |
| | ) |
| Gatewood A. Walden | ) CASE NO. 2:13-mc-3643-WKW |
| | ) |
| Petitioner. | ) |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION

On April 11, 2014, this court entered an order (doc. # 11) disbarring Gatewood

A. Walden from the practice of law in this court.  That action was based on the

Alabama Supreme Court's affirmance of an order of disbarment by the Disciplinary

Board of the Alabama State Bar.  Walden appealed, and the Eleventh Circuit

remanded the case to this court for a determination of "whether the record underlying

the predicate state disbarment reveals the kind of infirmities identified in *Selling* [*v.*

*Radford,* 243 U.S. 46, 51 (1917)]."  In *Selling*, the Court held that in considering the

actions of a state court disbarring a lawyer, a federal court

> should recognize the condition created by the judgment of the state
> court unless, from an intrinsic consideration of the state record, one or
> all of the following conditions should appear: 1. That the state
> procedure, from want of notice or opportunity to be heard, was wanting
> in due process; 2, that there was such an infirmity of proof as to facts
> found to have established the want of fair private and professional
> character as to give rise to a clear conviction on our part that we could
> not, consistently with our duty, accept as final the conclusion on that
> subject; or 3, that some other grave reason existed which should
> convince us that to allow the natural consequences of the judgment to

have their effect would conflict with the duty which rests upon us not to disbar except upon the conviction that, under the principles of right and justice, we were constrained so to do.

*Selling*, 243 U.S. at 51.

Following the remand of this case to this court, the question of whether any infirmities identified by *Selling* existed in the state proceedings was referred to the undersigned for review or as *Selling* characterized it, an "intrinsic consideration of the state record." Based on that review, the court finds that Walden should be disbarred from the practice of law in this court.

At the outset of the court's discussion, one issue must be put to rest. On several occasions Walden has requested that the court conduct an evidentiary hearing, (docs. ## 39, 44 and 46) and those requests have been denied. It is not the proper task of this court to consider *de novo* Walden's fitness to practice law. *See In the Matter of Calvo*, 88 F.3d 962, 967 (11th Cir. 1996). Rather, the court must follow the mandate of the Eleventh Circuit and determine if there are any *Selling* infirmities shown in the record of the state disbarment proceedings.[1] To aid in understanding the court's conclusions, it is appropriate to review both the course of the state disbarment proceedings as well as the underlying facts which ultimately led to Walden's disbarment.

---

[1] A trial court must strictly comply with an appellate court's mandate, "implement[ing] both the letter and the spirit of the mandate taking into account the appellate court's opinion, and the circumstances it embraces." *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985).

## II.  THE FACTUAL BACKGROUND

The disciplinary proceedings commenced with the filing of Formal Charges with the Alabama State Bar.[2]  (Doc. # 36-1 at 8-12)  The charges along with a summons requiring Walden to respond to them were served on him on May 13, 2011.  (Doc. # 36-1 at 12).  These are the charges.

### FORMAL CHARGES

Comes now the Alabama State Bar, by and through the Office of General Counsel, and avers that it has probable cause for believing, and does believe and allege that Gatewood Andrew Walden (hereinafter referred to as "respondent attorney"), has been guilty of violating or failing to comply with the Rules of Professional Conduct of the Alabama State Bar, in that:

### CHARGE I

(Violation of Rule 3.l(a), Ala. R. Prof. C.]

1.    In November of 2004, the respondent attorney filed a lawsuit in the Circuit Court of Autauga County, Alabama against various defendants.

2.    During the course of the litigation, the respondent attorney caused rental monies that were in dispute to be wrongfully converted to the plaintiff.

3.    The Circuit Court of Autauga County ordered the wrongfully converted rental monies to be returned to the proper parties.

---

[2] Prior to the lodging of formal disciplinary proceedings, on April 15, 2011, Mr. Walden was temporarily suspended by order of the Disciplinary Commission of the Alabama State Bar.  (Doc. # 36-2 at 10)

4.     The Circuit Court of Autauga eventually ruled in favor of the defendants.

5.     The Alabama Supreme Court affirmed the judgment of the Circuit Court of Autauga County.

6.     Thereafter, the respondent attorney filed a lawsuit in the United States District Court, Middle District of Alabama against Charles Edmondson, counsel for the parties in the Autauga-County litigation, accusing him of various civil and criminal violations.

7.     The federal lawsuit was eventually dismissed by the Federal District Court.

8.     The dismissal was affirmed by the Eleventh Circuit Court of Appeals.

9.     While the federal action was still pending, the respondent attorney filed another lawsuit against Edmondson in the Circuit Court of Montgomery County, Alabama, alleging essentially the same theories as the federal action.

10.    The Circuit Court of Montgomery County dismissed the lawsuit and taxed attorney's fees and costs against the respondent attorney pursuant to the Alabama Litigation Accountability Act.

11.    The Alabama Supreme Court affirmed the dismissal of the Montgomery County litigation.

12.    The respondent attorney filed a motion in the Circuit Court of Autauga County claiming that the Autauga County order was Void and that the court lacked Jurisdiction.

13.    The Autauga County Circuit Court denied the motion and entered an order restricting the respondent attorney from entering the property or interfering with the operation of the property that was

the subject matter of the Autauga County litigation.

14.    In or about February of 2011, the respondent attorney caused the plaintiff in the Autauga County litigation to violate the previously entered order of the Circuit Court of Autauga County.

15.    On or about April 8, 2011, the Circuit Court of Autauga County entered an order holding the respondent attorney and other parties in contempt of court.

16.    The respondent attorney has continually continued to pursue litigation solely in an attempt to harass the parties and the counsel involved in the underlying litigation.

17.    Due to the actions of the respondent attorney in the underlying litigation, the Supreme Court of Alabama has issued sanctions and ordered the respondent attorney to appear and show cause as to why he should not be held in contempt.

18.    In doing the above-described acts, the respondent attorney violated or failed to comply with Rule 3.l(a), Ala. R. Prof. C., which states as follows:

## RULE 3.1

## MERITORIOUS CLAIMS AND CONTENTIONS

(a) In  his representation of a client, a lawyer shall  not file a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of the lawyer's client when the lawyer knows or when it is-obvious that such action would serve merely to harass or maliciously injure another.

## CHARGE II
### [Violation of Rule 8.4(a), Ala. R. Prof. C.]

1.      For Charge II, the Office of General Counsel adopts all of the allegations contained in paragraphs 1 through 17 of Charge I, and further alleges:

2.      In doing the above-described acts, the respondent attorney violated or failed to comply with Rule 8.4(a), Ala. R. Prof. C., which states as follows:

### RULE 8.4 MISCONDUCT

It is professional misconduct for a lawyer to:

    (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another.


## CHARGE III
### [Violation of Rule 8.4(d), Ala. R. Prof. C.]

1.      For Charge III, the Office of General Counsel adopts all of the allegations contained in paragraphs 1 through 17 of Charge I, and further alleges:

2.      In doing the above-described acts, the respondent attorney violated or failed to comply with Rule (8.4(d), Ala. R. Prof. C., which states as follows:

### RULE 8.4
### MISCONDUCT

It is professional misconduct for a lawyer to:

(d) engage in conduct that is prejudicial to the administration of justice.

## CHARGE IV
### [Violation of Rule (8.4(g), Ala. R. Prof. C.]

1.      For Charge IV, the Office of General Counsel adopts all of the allegations contained in paragraphs 1 through 17 of Charge I and further alleges:

2.      In doing the above-described acts, the respondent attorney violated or failed to comply with Rule 8.4(g), Ala. R. Prof. C., which states as follows:

### RULE 8.4
### MISCONDUCT

It is professional misconduct for a lawyer to:

(g) engage in any other conduct that adversely reflects on his fitness to practice law.

Walden responded by filing a lengthy motion for summary judgment. (Doc. # 36-1 at 13). That motion was denied on March 1, 2012, as were two other summary judgment motions filed by Walden on February 3 and February 15, 2012. (Doc. # 36-2 at 3). A hearing before the Disciplinary Board Panel No. III was convened on March 15, 2012. (Doc. # 22-1 at 7). Walden represented himself at the hearing and was afforded a complete opportunity to present evidence in his behalf. Following the hearing, the hearing officer issued a report and order embodying the decision of the Disciplinary Board. (Doc. # 36-2 at 10). The Board unanimously found that

Walden had violated each of the Alabama Rules of Professional Conduct as set forth in the formal charges, (doc. # 36-2 at 24-25) and ordered his disbarment.  *In the Matter of Gatewood Andrew Walden, an Attorney at Law*, Alabama State Bar No. 09-1040(A) (Doc. # 36-2 at 27).   Walden appealed the disbarment order to the Alabama Supreme Court on June 25, 2012. (Doc. # 34-5 at 8).  That court affirmed the order of disbarment effective February 22, 2013.  (Doc. # 8-2).

The Kafkaesque back story of the events which led to Walden's disbarment is set out in *Walden v. ES Capital, LLC,* 89 So.3d 90 (Ala. 2011). Willadean Walden is the mother of Gatewood Walden, and he represented her during nine years of disputes and litigation over debts and ownership of the Danya Park apartment complex in Prattville, Autauga County, Alabama.  In 2004 some of the disputants with claims to an interest in the apartment complex agreed to the entry of an order by the Circuit Court of Montgomery County, Alabama.  That order which was entered on November 4, 2004, said in relevant part:

> To clear up any confusion as to the owner of said apartment complex, the court hereby declares that the plaintiff, Willadean Walden[,] is the owner of the common stock in [the corporation which owns the apartments], and she is, therefore, the owner of the fee simple title to [the apartments].'

89 So.3d at 96 (alterations in original).

Armed with this order, Willadean Walden, represented by Gatewood Walden, then filed a lawsuit in the Circuit Court of Autauga County, Alabama, essentially

seeking complete control and ownership of Danya Park. *See Walden,* 89 So.3d at 96. That suit was not successful, and finally in 2010, in accord with the decisions of the state courts, title to the apartments was vested in a trust subject to a first mortgage held by a corporation. However, sometime prior to January 13, 2009, Willadean Walden transferred all of her ownership interest in Danya Park to Crooked Creek Properties, Inc. which, still represented by Gatewood Walden, filed a lawsuit in this court,[3] *Crooked Creek Properties, Inc. v. Ensley*, __ F.Supp. 2d __, 2009 WL 3644835 (M.D. Ala. 2009)(*Crooked Creek I*).[4] This court granted the defendants' motion to dismiss finding that all of the claims were precluded by the doctrine of res judicata based on final decisions of the state courts. *See Id.* Crooked Creek appealed. On September 9, 2010, the Eleventh Circuit affirmed this court. *Crooked Creek Properties, Inc. v. Ensley*, 380 F. App'x 914 (11th Cir. 2010).

On December 4, 2009, still represented by Gatewood Walden, Crooked Creek filed another complaint in this court. *Crooked Creek Properties, Inc. v. Hutchinson, et al.,* 2:09-cv-1104-WKW (M.D. Ala.) (*Crooked Creek II*). This court quickly

---

[3] The court's opinion in *Walden v. ES Capital, LLC,* 89 So.3d 90, 98 (Ala. 2011), incorrectly identifies this court as the Northern District of Alabama.

[4] The complaint alleged that the defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*; and various federal criminal statutes, including 18 U.S.C. §§ 1957 (money laundering), 1951(a) (extortion), 666(a) (theft or bribery concerning programs receiving federal funds), and 2314 (transportation of stolen money), and asserted numerous state law claims.

dismissed this case on motion of the defendants.  Because its order dismissing the

case contains an excellent synopsis that can't be improved upon, it is set out here.

> Briefly, Crooked Creek insists that, as a result of prior judgments its predecessor-in-interest (Willadean Walden) obtained in the Montgomery County Suit, it is the owner of all of the common stock in a corporation that has as its sole asset Danya Park Apartments. Ms. Walden later learned, however, that a quitclaim deed and a separate mortgage on Danya Park Apartments had been recorded in the Autauga County Probate Court. The mortgage had been recorded by the Ensley defendants, and the quitclaim deed by George Hutchison. As to the quitclaim deed, George Hutchison claimed that in 1998, he was given a quitclaim deed to Danya Park Apartments from the prior owner, and that in 1999, he transferred the quitclaim deed to a trust that he created for the benefit of his son (the "George Hutchison Jr. Trust"). Hence, Ms. Walden commenced proceedings in the Autauga County Circuit Court to remove these clouds on her title.

> In 2006, the Autauga County Circuit Court disagreed with Ms. Walden's claim to ownership of Danya Park Apartments, finding that the 2002 judgment in the Montgomery County Suit giving Ms. Walden only a lien was the "'law of the case.'" *Crooked Creek I*, 2009 WL 3644835, at *4 (quoting Autauga County Suit, Summ. J. Op. 5, dated Dec. 2006). The Autauga County Circuit Court judgment awarded the Ensley defendants a first mortgage on Danya Park Apartments superior to Ms. Walden's lien, and rendered enforceable and valid a management agreement governing the Ensley defendants' operation of Danya Park Apartments and the collection of rent. The Autauga County Circuit Court also found that the quitclaim deed was in fact an equitable mortgage and amounted to a secondary lien ("equitable second mortgage") subject only to the Ensley defendants' first mortgage lien. The Supreme Court of Alabama agreed insofar as it held that the George Hutchison Jr. Trust had a valid secondary lien on Danya Park Apartments. It held, however, that George Hutchison was judicially estopped (for reasons not pertinent to the present analysis) from claiming any interest in the quitclaim mortgage on Danya Park Apartments. *Walden v. Hutchinson*, 987 So. 2d 1109, 1117-19 (Ala. 2007). Hence, as a result of the Autauga County Suit judgment, Crooked Creek's interest in Danya Park Apartments was subordinate to

both the Ensley defendants' first mortgage lien and the George Hutchison Jr. Trust's equitable second mortgage.

The judgment rendered as a result of the Autuaga County Suit was the catalyst for Crooked Creek I, which was filed in this court by Crooked Creek, as the successor-in-interest to Ms. Walden's ownership interest in Danya Park Apartments.  The Ensley defendants and their attorney were among the defendants.  In *Crooked Creek I*, the Ensley defendants argued that, under the doctrine of res judicata, the Autauga County Suit judgment foreclosed Crooked Creek from reigniting the ownership dispute over Danya Park Apartments in federal court. The facts and causes of action in Crooked Creek I all pertained to the validity of the Ensley defendants' first mortgage and the management agreement. Applying Alabama res judicata principles, this court found that the Autauga County Suit judgment was a prior judgment on the merits, rendered by a court of competent jurisdiction, and that it involved the same subject matter and the same parties (or their privies) as were then before it. The Eleventh Circuit affirmed the judgment. *See Crooked Creek Props., Inc. v. Ensley*, No. 09-15988, 2010 WL 2136027 (11th Cir. May 29, 2010) [*Crooked Creek I*]

Undeterred, in this lawsuit, Crooked Creek sues (1) George Hutchison, (2) Donald Hutchison, individually and in his capacity as the trustee of the George Hutchison Jr. Trust, and (3) Mr. McDowell, George Hutchison's attorney. The first twenty-eight pages of the Complaint recite the history of the Montgomery County Suit and the Autauga County Suit. The claims in the present action allegedly arose in the "aftermath of the state court litigation" (Compl. 28), when George Hutchison, represented by Mr. McDowell, initiated foreclosure proceedings on the equitable second mortgage on Danya Park Apartments held by the George Hutchison Jr. Trust. George Hutchison allegedly did so without giving actual notice to Crooked Creek as the "fee simple" owner of Danya Park Apartments, and notwithstanding that the George Hutchison Jr. Trust had not "acquired any proprietary interest in Danya Park Apartments." (Compl. ¶¶ 8, 17, 86, 111.) Crooked Creek avers that the "underlying purported quitclaim deed" transferred from George Hutchison to the George Hutchison Jr. Trust is void for a number of reasons previously litigated in the Autauga County Suit and also because the Autauga County Suit judgment giving the George Hutchison Jr. Trust an equitable second mortgage on Danya

Park Apartments is void. And, if the Autauga County Suit judgment that validates the George Hutchison Jr. Trust's equitable second mortgage "is itself invalid," then the "mortgage foreclosure sale is invalid and is due to be set aside." (Pl. Resp. 42-43 (Doc. # 29); see also Compl. ¶ 17.)

By these arguments, Crooked Creek clings to the Montgomery County Circuit Court judgments giving it, in effect, ownership of Danya Park Apartments. As Crooked Creek admits, "at the heart of this complaint is Crooked Creek's belief and contention that the judgments of the Montgomery [County] Circuit Court are valid, while the judgments of the Autauga [County] Circuit Court and the state appellate court are . . . void." (Compl. ¶ 14; see also Compl. ¶ 3 (As a result of the 2004 "unappealed, unreversed, consent judgment Mrs. Walden became . . . the equitable owner of Danya Park Apartments."); Pl. Resp. 41.)

Crooked Creek brings claims to set aside the foreclosure sale (Count One), for conspiracy to wrongfully foreclose on its property (Count Two), for intentional interference with Crooked Creek's business relations with Danya Park Apartments' tenants (Count Three), for cancellation of the quitclaim deed (Count Four), for damages flowing from the wrongful foreclosure (Count Five), and for conspiracy to obtain unjust enrichment (Count Six).

Defendants argue that the doctrine of res judicata again precludes Crooked Creek from litigating the matters decided adversely to its predecessor-in-interest (Ms. Walden) in the Autauga County Suit. Alabama's law on res judicata applies. *See Crooked Creek I*, 2009 WL 3644835, at *7-8 . . .

The doctrine of res judicata clearly bars Crooked Creek's action for substantially the same reasons espoused in Crooked Creek I. That reasoning is incorporated here so as to avoid needless repetition. See Crooked Creek I, 2009 WL 3644835, at *7-21. The reasoning will be summarized.

First, the Autauga County Suit resulted in a valid, final judgment on the merits. The judgment gave the George Hutchison Jr. Trust an equitable second mortgage on Danya Park Apartments.

Second, Alabama's courts are courts of competent jurisdiction. Nonetheless, Crooked Creek spends much of its brief arguing that the Autauga County Suit judgment is void for lack of subject matter jurisdiction and is based upon a misunderstanding of procedural and substantive rules of law; hence, Crooked Creek contends that the jurisdiction of the Autauga County Circuit Court (and of the reviewing appellate courts) was not competent. In fact, the sole argument against the application of the doctrine of res judicata urged by Crooked Creek is that the doctrine is "inapplicable to void judgments." (Pl. Resp. 38-40.) This argument was, however, considered and rejected in *Crooked Creek I*, and on appeal. *See Crooked Creek*, 2010 WL 2136027, at *2 (explaining that the action to quiet title in the Autauga County Suit gave the circuit court jurisdiction to establish title and that, "even if it were true that the Autauga Court erred" in its analysis, under Alabama law, "'the simple fact that a court has erroneously applied the law does not render its judgment void.'" (quoting *Neal v. Neal*, 856 So. 2d 766, 781 (Ala. 2002)); *see also Crooked Creek I*, 2009 WL 3644835, at *10 (distinguishing between a "void judgment" and an "erroneous judgment" and discussing the Autauga County Circuit Court's jurisdiction). For the same reasons, the argument is again rejected here.

Third, Alabama's law on privity, for purposes of res judicata, is elaborated upon in *Crooked Creek I*. See 2009 WL 3644835, at *13-18. Based upon application of those principles here, Crooked Creek and Defendants in this action were parties or privies in the Autauga County Suit.  Crooked Creek has not argued to the contrary.

Fourth, in this action and in the Autauga County Suit, the primary right asserted by Crooked Creek and Ms. Walden is the alleged right to unencumbered ownership of Danya Park Apartments, while the primary wrong centers on Defendants' interference with that ownership. The interference in this case, as in the Autauga County Suit, includes the quitclaim deed (i.e., the equitable second mortgage) on Danya Park Apartments, and the principal contention is that the quitclaim deed is void. (Compare Autauga County Suit, Compl. ¶ 24 ("Hutchison's quitclaim deed is absolutely void."), with Compl. ¶ 6 (enumerating six reasons why the quitclaim deed is void).) Parallel relief also is sought. In this case, "Crooked Creek . . . seeks to cancel defendants' unlawful and illegal 'equitable mortgage' or to have it

13

declared inoperative and void." (Compl. ¶ 6.) Similarly, the Autauga County Suit complaint sought a judgment declaring that Ms. Walden "ha[d] the entire undivided fee simple interest in and to [Danya Park Apartments] with no restrictions thereon." (Autauga County Suit Compl. 20.) While Crooked Creek crafts some of its legal theories differently in this lawsuit (focusing on an alleged wrongful foreclosure), it merely is attempting to do indirectly what it cannot do directly – attack the validity and enforceability of the quitclaim deed held by the George Hutchison Jr. Trust.  Both lawsuits concern the same subject matter (i.e., ownership control of Danya Park Apartments), and revolve around the same nucleus of operative facts. For these reasons, the causes of action are the same for res judicata purposes.

Accordingly, all of the res judicata elements under Alabama law are satisfied, and Crooked Creek is precluded from relitigating the claims it has brought in this suit. Defendants' arguments for dismissal on the merits, therefore, need not be addressed, although they are persuasive.

Order, (Doc. # 37) *Crooked Creek Properties, Inc. v. Hutchinson, et al.,* 2:09-cv-1104-WKW (M.D. Ala. September 9, 2010).[5]

While *Crooked Creek I* was pending in this court, Willadean Walden,[6] individually, commenced a separate civil action against Edmondson[7] in the Montgomery Circuit Court on August 28, 2009 (case no. CV–2009–901010). Walden sought damages against Edmondson for conspiracy, tortious interference with business relations, violations of the Alabama Rules of Professional Conduct,

---

[5] Crooked Creek appealed, and on August 9, 2011, the Eleventh Circuit affirmed the dismissal, granted the appellees' motion for attorneys' fees and costs, and remanded the case to this court for a determination of those fees and costs.  A total of $14, 403.22 fees and costs was awarded to the appellees.  Final J., (Doc. # 50) *Crooked Creek Properties, Inc. v. Hutchinson, et al*., 2:09-cv-1104-WKW (M.D. Ala. May 2, 2013).

[6] Represented by Gatewood Walden.

[7] Charles W. Edmondson served as counsel of record for the purported property owners in the Autauga County quiet-title action.

and conversion apparently based on Edmondson's representation of Ensley in the Autauga Circuit Court case (case no. CV–04–390). Edmondson moved to dismiss Walden's complaint and for the imposition of sanctions. *See Walden*, 89 So. 3d at 99 (Ala. 2011). After this court entered judgment in *Crooked Creek I*, the Montgomery Circuit Court dismissed the action against Edmondson and imposed sanctions. *Id*. at 100. On appeal, the Alabama Supreme Court likewise imposed monetary sanctions on Walden under Rule 38[8] ALA. R. APP. P. *Walden v. Edmondson* (No. 1091170, March 11, 2011), --- So.3d --- (Ala. 2011) (table).

In April 2010, Crooked Creek, represented by Gatewood Walden, filed in the Circuit Court of Montgomery County an action against Ensley and other defendants.[9] On May 17, 2010, the Montgomery Circuit Court entered an order finding

> That Willadean Walden as the equitable owner of Danya Park Apartments, Prattville, Alabama, has the right *to the peaceful entry to said property and* has a common law property owner's right to forbid entry to her property to whomever she chooses.

*Walden*, 89 So.3d at 101.

---

[8] "In civil cases, if the appellate court shall determine on motion or ex mero motu that an appeal is frivolous, it may award just damages and single or double costs to the appellee." ALA. R. APP. P. 38.

[9] Walden sought "an accounting of tenant rent moneys collected by Ensley in his role as manager of the apartments (count I); challenging and seeking cancellation and/or recission of Ensley's contract to manage the apartments (count II); 8 and a permanent injunction "restraining and enjoining ... Ensley from again entering upon [the apartment] property" and "restraining and enjoining ... Ensley from obtaining possession of ... [the apartment] tenants' rent checks and from affixing unauthorized endorsements thereon" (count III)." *Walden v. ES Capital, LLC*, 89 So.3d 90, 100 (Ala. 2011).

Unsurprisingly, this order prompted Ensley and other defendants[10] to seek relief in the Autauga Circuit Court, the jurisdiction where the property is located. After a hearing, on June 11, 2010, the Autauga Circuit Court enjoined Willadean Walden and Crooked Creek from enforcing the Montgomery Circuit Court's May 17, 2010, order against any parties not named in that action.  *Id.* at 101.  In salient part, the order further enjoined Willadean Walden and Crooked Creek as well as Gatewood Walden from

> in any way attempting to interfere with the ownership or management of Danya Park Garden Apartments located on Danya Court in Prattville, Alabama. Willadean Walden, Crooked Creek Properties, Inc., and their successors, representatives, attorneys and assigns are further enjoined from entering upon or having anyone enter upon the property of Danya Park Apartments to assert any ownership of the Apartments or attempt to exercise any control over the Apartments.

*Id.*

Walden and Crooked Creek appealed.  And, in *Walden v. ES Capital, LLC*, the Alabama Supreme Court made several findings:

> [T]he Montgomery Circuit Court's May 17, 2010, order was based on a previous order, which had been superseded by the December 4, 2006, summary judgment of the Autauga Circuit Court in case no. CV–04– 390 and by this Court's affirmance of that judgment in *Walden v. Hutchinson*, 987 So.2d 1109 (Ala.2007). Therefore, Walden's declaratory-judgment action in case no. CV–10–538 represented nothing more than an attempt to enforce a superseded order that was clearly contrary to the established law of the case as between these parties, as set out above in the Autauga Circuit Court case (case no.

---

[10] ES Capital, LLC and the George Ellis Hutchinson, Jr., Present Interest Trust No. 1.

> CV–04–390), and that was affirmed by this Court on appeal.  *See Walden v. Hutchinson and Crooked Creek I*, supra.

89 So.3d 90, 107 (Ala. 2011).

The Alabama Supreme Court further found that the Montgomery Circuit Court was an improper venue for adjudication of the rights of all parties claiming an interest to the apartments because an action to determine the validity of title to real estate must be commenced where the land is situated.  *Id*. at 106.  And, to

> the extent that Walden's pleadings in the underlying Montgomery Circuit Court action and in the resulting appeal represent an attempt to challenge previous holdings of this Court, they are frivolous, meritless, and—as at least four courts have already concluded—barred by the doctrine of res judicata.

*Id*. at 108.

The Supreme Court, referring to one of its prior cases,[11] noted that the actions of Gatewood Walden and his clients represented

> [r]epeated litigation of a right which has been adjudicated with finality . . . is without any legitimate purpose and constitutes a vexatious and oppressive harassment of a litigant in contravention of his right to a speedy and efficient administration of justice.

*Id.*

Based on these conclusions, the Court emphatically stated

> we uphold the authority of the Autauga Circuit Court to enjoin Willadean Walden and Crooked Creek from further "baseless and

---

[11] *Johnston v. Bridges*, 288 Ala. 156, 159-60, 258 So.2d 866, 868-69 (1972), overruled on other grounds, *Pierce v. Orr*, 540 So.2d 1364 (Ala.1989).

vexatious suits" aimed at establishing their ownership of the
apartments, and we hereby affirm the June 11, 2010, order doing so.

*Id*. at 109.

The Alabama Supreme Court's opinion was issued on May 20, 2011.  Before

that opinion was handed down, the Autauga Circuit Court was confronted with

consideration of a criminal contempt action against Willadean Walden, Gatewood

Walden and Crooked Creek Properties relating to actions they took while their

appeal of the June 11, 2010 injunction was pending in the Alabama Supreme Court.

Again, the court will liberally quote from the order entered by the Autauga Court

following a hearing it held on April 4, 2011.

All parties were given the opportunity to call witnesses and present
evidence related to the Contempt Petition. Gatewood Walden, the
attorney for the Respondents, did not cross-examine the Petitioners'
witnesses and stipulated that the newspaper article in the February 26,
2011 edition of The Prattville Progress submitted into evidence and the
quotes attributed to him therein were accurate.  Mr. Don Fletcher, the
newspaper reporter for The Prattville Progress, testified that the quote
attributed to Gatewood Walden that Willadean Walden's action was one
of "civil disobedience to provoke Judge Fuller into holding mother in
contempt," was an accurate quote.  Mr. Fletcher further testified that it
was Gatewood Walden who contacted him prior to Willadean Walden,
her daughter-in-law, Pat Walden, and her granddaughter, Jackie
Wingard, going to the apartments and posting the complained of flyers
on the apartment doors. According to Mr. Fletcher, Mr. Walden told
him there might be some "fireworks" at the apartments. Mr. Walden did
not dispute any of this testimony. Pat Walden, the wife of Gatewood
Walden, admitted that she "knew that she was acting in violation of this
Court's order of June 11, 2010" when she went onto the property of the
subject apartments.
    Mrs. Willadean Walden admitted signing the flyers which
purported to require the tenants of Danya Park Apartments to mail all

future rent payments to her, c/o Jackie Wingard. Brannon Walden, an officer of Crooked Creek Properties, Inc., acknowledged during his testimony that he knew of the injunction and knew that his grandmother, mother and sister were going to post flyers in defiance of this Court's order and that they had discussed their actions prior to the flyers being posted on the property.

None of the three Respondents denied that they were in violation of the Court's order, nor did any of the Respondents offer any reasonable justification for their conduct. After hearing the testimony and evidence presented by the parties on April 4, 2011, and having fully considered same, the Court finds that Gatewood Walden both initiated and orchestrated the Respondents' defiance of this Court's lawful Order. Further, the Court finds that Gatewôod Walden, Willadean Walden and Crooked Creek Properties. Inc. each knowingly and intentionally acted in defiance and complete disregard of this Court's June 11, 2010 Order enjoining them from such conduct as they jointly planned and ultimately undertook.

(Doc. # 36-4 at 144-46).

Based on these findings, the Court found each of respondents in contempt and imposed on each a sanction of $2500.00.  The Court further had this to say about Gatewood Walden.

Concerning Gatewood Walden, the Court finds that his conduct in this matter is especially disdainful considering his position as an officer of the Court, and considering the fact that he orchestrated the activities which have resulted in these findings. Mr. Walden has intentionally violated this Court's lawful Order and has further sought to publicly highlight his intentional violation by alerting the press of his intent to do so, and inviting members of the press to cover the event as though to witness a heroic or noble act. Such conduct cannot be condoned in a society that values the rule of law and holds in high esteem, the professionals entrusted to administer it.

(Doc. # 36-4 at 146-47).

The Court imposed on Gatewood Walden the further sanction of 12 hours imprisonment and referred the matter to the Alabama State Bar "for the initiation of any action deemed appropriate . . ." (Doc. # 36-4 at 147).  As noted above, the Bar served the written charges on Gatewood Walden on May 13, 2011, and conducted a hearing on March 15, 2012, after which Gatewood Walden was disbarred.

### III.  DISCUSSION

*A.  Due Process*.  *Selling* first requires the court to consider whether "from an intrinsic consideration of the state record . . . the state procedure, from want of notice or opportunity to be heard, was wanting in due process."  243 U.S. at 51.  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation omitted). "The guarantees of due process call for a hearing appropriate to the nature of the case." *United States v. Raddatz*, 447 U.S. 667, 677 (1980).  Mr. Walden was given notice of the charges against him as reflected above.  He was afforded and exercised his opportunity for a hearing before a disciplinary committee of the Alabama State Bar.  (Doc. # 22-1).  Mr. Walden testified; he called numerous witnesses, and presented argument to the committee. In short, with respect to the notice and hearing before the disciplinary committee, Mr. Walden was afforded due process appropriate to the circumstances.

At the conclusion of the hearing, the disciplinary committee deliberated and then returned a unanimous decision finding Mr. Walden guilty of each charge set out in the formal charges.  (Doc. # 22-1 at 158-59).  The penalty phase then began. (*Id.*)

> THE HEARING OFFICER: So, we're now to the penalty phase. Do you understand now what the penalty phase is?
>
> MR. WALDEN: I assume I do.
>
> THE HEARING OFFICER: It's where there are aggravating or mitigating circumstances you need to talk about. And we'll ask the State Bar to go first and give us its position.

*Id.*

After counsel for the Bar argued its position, Mr. Walden addressed the committee.  *Id.* at 163.  Following the arguments, the committee again deliberated and then announced its decision.

> THE HEARING OFFICER: All right. Mr. Walden, the unanimous decision of the panel is that you be suspended for an additional six months, all right? After which time, you have the right to file a petition for reinstatement.  That's our decision.
> You will get a written order containing the findings of fact and the rules of law in 30 days.

*Id.* at 169.

However, on June 14, 2012, the Report and Order of Disciplinary Committee Hearing Officer was filed and ordered that Mr. Walden be disbarred rather than suspended.  Mr. Walden contends that the order of disbarment deprived him of due

process.[12]  Mr. Walden appealed his disbarment to the Alabama Supreme Court and in that court he had the opportunity to raise this claim.  Thus, he was not deprived of the opportunity to present his objections to either the procedure or the punishment. *See Mullane  v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  *See also Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard.")   For these reasons, the court concludes that Mr. Walden was not deprived of due process in the state procedures.

B.  *Sufficiency of the Proof*.  This is the second prong of *Selling* under which the court must determine if "there was such an infirmity of proof as to facts found to have established the want of fair private and professional character as to give rise to a clear conviction on our part that we could not, consistently with our duty, accept as final the conclusion on that subject . . ."  243 U.S. at 51.  To be blunt, the proof was overwhelming.  And there is no need for the court to plow additional ground in demonstration of that fact.   The Alabama Supreme Court, the final arbiter of Alabama law, found that Mr. Walden's repeated litigation constituted "vexatious and oppressive harassment of a litigant in contravention of his rights to speedy and

---

[12] Mr. Walden also contends that the imposition of disbarment violated the State Bar rules which require the punishment to be announced at the conclusion of the hearing.  Whether that proposition is correct is of no moment.  There is no per se rule that every deviation from an agency's rule constitutes a constitutional violation.  *Am. Civil Liberties Union of Florida, Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1229 (11th Cir. 2009).  As discussed in the body of the text, no due process violation occurred here.

efficient administration of justice." *Walden*, 89 So.2d at 108.  While *Walden v. ES Capital* remained pending on appeal, Walden advised his clients to ignore the Autauga Circuit Court's order and enter the Danya Park Apartment property, an act which Mr. Walden sought to minimize by characterizing it as one of "civil disobedience."  Mr. Walden's characterization is disingenuous; his conduct was a direct, purposeful violation of an order of a court.  Thus, there was sufficient proof that Mr. Walden violated Rules of Professional Conduct of the Alabama State Bar, Rule 3.1, Rule 8.4(d) and Rule 8.4(g).[13]

The Bar also alleged that Mr. Walden violated Rule 8.4(a), under which it is professional misconduct for a lawyer to "violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."  During the disciplinary hearing, Mr. Walden admitted that in February 2012 he participated with Willadean Walden's new lawyer in filing in the Montgomery Circuit Court a complaint for declaratory judgment.  This participation was after Mr. Walden had been held in contempt.  (Doc. # 22-1 at 35-36).  In his principal brief filed in this court, this is how Mr. Walden described the facts relating to this last charge.

> Mrs. Walden retained attorney Jerry Cruse to represent her.  He advised filing a Declaratory Judgment action in the Montgomery Circuit Court seeking clarification and validation of the 2004 consent judgment.

---

[13] Mr. Walden's knowing violation of a court order (his "civil disobedience"), even one he contends is void, while the issue was on appeal plainly reflects on his fitness to practice law.

Judge Price entered judgment in favor of Mrs. Walden declaring that the 2004 consent judgment was valid, that she had lawfully acquired ownership of the closely held Alabama corporation, and, consequently, that she had a common law owner's property right to the unfettered use and enjoyment of her corporation's Autauga County housing project.

When the Autauga Judge learned of Judge Price's declaratory judgment in favor of Mrs. Walden he was irate. Again he held Mrs. Walden, then 95 years of age, in contempt of court and ordered the Sheriff to arrest her. He also held Mr. Cruse and petitioner in contempt of court. Yet all that petitioner had done was attest to the truth of the allegations contained in the Declaratory Judgment complaint; hardly actionable contemptuous conduct by any objective standard.

(Doc. # 34 at 15-16).

This lawsuit was filed well after *Walden v ES Capital* was handed down by the Alabama Supreme Court on May 20, 2011, a case which should have settled the question of whether Willadean Walden and Crooked Creek could continue to contest the ownership of the apartments.

The issues Walden now attempts to reassert "'[have previously] been adjudicated with finality.'" . . . Therefore, . . . we uphold the authority of the Autauga Circuit Court to enjoin Willadean Walden and Crooked Creek from further "baseless and vexatious suits" aimed at establishing their ownership of the apartments . . .

89 So.2d at 109.

Mr. Walden attempts to evade his responsibility regarding this suit by arguing that all he did was "attest to the truth of the allegations contained in the Declaratory Judgment complaint . . ."  (Doc. # 34 at 7).  Whether his attestation constituted knowing assistance within the meaning of Rule 8.4(a) was a matter for the Bar and the state courts to decide.  Regardless, a reasonable person could conclude that it

was. There was ample proof, therefore, that Mr. Walden violated the provisions of Rule 8.4(a).

Mr. Walden argues that the proof adduced by the bar failed to meet the clear and convincing standard required by Alabama Rule of Disciplinary Procedure 19(a). But that is not the *Selling* standard. Indeed, while it does not appear that the 11th Circuit has addressed the precise question,[14] other circuits have determined that it is the lawyer facing reciprocal discipline who has the burden to show by clear and convincing evidence that discipline was unwarranted. *See Fed. Grievance Comm. v. Williams*, 743 F.3d 28, 29 (2d Cir. 2014), *reh'g denied* (Apr. 10, 2014), as amended (Apr. 10, 2014), *cert. denied*, __ U.S. __, 135 S. Ct. 1423 (Feb. 23, 2015); *In re Zeno,* 504 F.3d 64, 66 (1st Cir. 2007); *In re Kramer*, 282 F.3d 721, 724 (9th Cir. 2002). Walden certainly does not meet his burden to show by clear and convincing evidence that discipline was unwarranted.

Mr. Walden also advances the argument that he could not be disbarred

because under settled Alabama disciplinary law, a lawyer is not subject to a sanction under Rule 8.4 (d) unless he has been separately prosecuted and convicted for a violation of 13A-10-130(a)(1), Ala Code 1975. *See Tipler v. Alabama State Bar*, 866 So.2d 1126, 1137 (Ala. 2003); *Jordan v. Alabama State Bar Assn*, 92 So.3d 724 (Ala. 2012), and *Alabama State Bar v. Quinn*, 926 So.2d 1018 (Ala. 2005). Because

---

[14] However, the 11th Circuit has confirmed that "[t]he burden is on the disbarred attorney to show good cause why he should not be disbarred, and the district court is not required "to conduct a de novo trial in the first instance of [the attorney's] fitness to practice law." . . . Instead, it must determine whether "the record underlying the predicate state disbarment ... reveal[s] the kind of infirmities identified in *Selling*." *In the Matter of Calvo*, 88 F.3d at 967 (citation omitted).

petitioner was neither prosecuted nor convicted under the statute he was innocent of the charge of violating Rule 8.4 (d) as a matter of law.

(Doc. # 34 at 18).

Alabama Rule of Professional Conduct 8.4 generally involves professional misconduct.  A comment to the Rule provides that "[t]his rule does not repeal, abrogate or modify Rule 22 of the Alabama Rules of Disciplinary Procedure (interim) which provides for mandatory disbarment or suspension under specified circumstances."  Each of the three cases cited by Mr. Walden concern *mandatory* discipline which under Disciplinary Rule 22 must be imposed.  Mr. Walden overlooks Disciplinary Rule 2 which provides that "[d]iscipline may be imposed for . . . [a] [v]iolation of a rule of professional conduct contained in the Alabama Rules of Professional Conduct as from time to time shall be in effect in the state of Alabama, whether or not the violation occurred in the course of the lawyer-client relationship . . ."  Walden's argument lacks merit because the discipline imposed on him was consistent with Disciplinary Rule 2.

*C.  Some Grave Reason*.  The third prong of the *Selling* standard requires the court to consider whether another grave reason convinces the court that the state court disbarment should not give rise to a federal court disbarment under the principles of right and justice.  *In the Matter of Calvo*, 88 F.3d at 966-67.  Mr. Walden advances several arguments which seem to more logically fit under this prong.

Mr. Walden argues that the court should not impose reciprocal discipline upon him under Professional Conduct Rule 3.1(a) for instituting harassing civil suits because those suits were "justifiably founded upon the validity of the Montgomery parties valid 2004 compromise settlement agreement and upon the validity of a conveyance of corporate stock to petitioner's client." (Doc. # 34 at 11). In other words, even after Mr. Walden was held in contempt and jailed and after he was disbarred, he clings to the view that the 2004 settlement agreement absolved him of any wrongdoing. But, as recounted above, the decisions of the Alabama Supreme Court in *Walden v. ES Capital, supra,* and this court in *Crooked Creek I* and *II,* demonstrate that his intransigence in holding to this view is fallacious. The Alabama Supreme Court found that Mr. Walden filed harassing and vexatious lawsuits. Mr. Walden is demonstrably unable to accept this fact, and that was painfully evident at the disciplinary hearing which this one excerpt shows.

> THE HEARING OFFICER: So you are still going to litigate if you can the issue that Judge Fuller's order is to use yours words void admonitio? (sic) Is that still the position you take?
>
> MR. WALDEN- I -- that depends on the lawyers that are going to take this case up to the United States Supreme Court. We've discussed that. As to whether or not that aspect will be argued before the court, if the court accepts cert, I think it should. Because it is clear that one circuit judge cannot collaterally attack the judgements, orders and decrees of another judge. That's what Judge Fuller did.

(Doc. # 22-1 at 98-99).

Mr. Walden's obdurate adherence to a proposition that has been rejected by state and federal courts time after time is sufficient witness to show that the principles of right and justice were not impaired by his disbarment.

Mr. Walden also contends that the Disciplinary Committee failed to apply the doctrine of proportionality in deciding to disbar him.  Whether a disciplinary action should be governed by principles of proportionality is controlled by state law, rule or regulation.  Proportionality is not one of the *Selling* principles.  Moreover, Mr. Walden fails to show that proportionality is required under Alabama law.

Mr. Walden also argues that the court should not adopt the disbarment imposed by Disciplinary Committee because it failed to consider his prior flawless professional record and the comparatively benign nature of the charges against him. (Doc. # 34 at 12).  Contrary to Mr. Walden's view, his actions were not benign.  He advised a client to violate and he violated a court's order, the validity of which was upheld on appeal.  And at the disciplinary hearing, he advised that he would continue to act on his view of the law even though contrary to the decisions of the state court. A lawyer may disagree with a court's decisions, but a lawyer may not arrogate to himself the right to declare what is the law or to act in defiance of the law.  Mr. Walden fails to show that principles of right and justice preclude his disbarment.

### III. CONCLUSION

Many of the arguments advanced by Mr. Walden ask this court to review *de novo* the actions of the state court and Disciplinary Committee.  But that is not the function of this court and such a review would be inconsistent with *Selling* and the mandate of the 11th Circuit directing this court to conduct the *Selling* review.  Although a state court disciplinary action is not conclusively binding upon the federal judiciary, under *Selling*, 243 U.S. at 50-51, federal courts are nevertheless obliged to accord a high level of deference to state court disbarment proceedings.  *See also Theard v. United States*, 354 U.S. 278, 281-82, (1957); *In re Attorney Discipline Matter*, 98 F.3d 1082, 1087 (8th Cir. 1996); *Matter of Randall*, 640 F.2d 898, 901 (8th Cir. 1981).  An intrinsic review of the proceedings does not disclose any *Selling* infirmity.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the court find that after the conduct of an intrinsic review of the state record of disbarment no *Selling* infirmity exists and that Gatewood Walden be disbarred from the practice of law in this court.  It is further

ORDERED that the parties shall file any objections to this Recommendation on or before **September 16, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file

written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11ᵀᴴ CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this the 2nd day of September, 2016


/s/Charles S. Coody
_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE